# 2006 DTA 50

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE CAGUAS**
**PANEL IX**

MELISSA TORRES RAMOS
Demandante-Apelada

v.

METRO GUARD SERVICES, INC
Demandado-Apelante

Núm. KLAN-04-01110

San Juan, Puerto Rico, a 22 de febrero de 2006

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Escribano Medina y Salas Soler

Pesante Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La controversia traída ante nuestra atención nos da la oportunidad de expresarnos sobre la Ley para Reglamentar el Período de Lactancia o de Extracción de Leche, Ley Núm. 427 de 16 de diciembre de 2000. En particular, nos expresamos sobre dos asuntos fundamentales de dicha pieza legislativa. Primero, sobre el deber que impone la ley a toda madre trabajadora que desee utilizar la oportunidad de lactar a su criatura a presentar al patrono una certificación médica durante el cuarto y octavo mes de nacido el infante, y ello, para acreditarle que la madre ha estado lactando a la criatura. Segundo, sobre la naturaleza y alcance del concepto *"lugar habilitado"* o *"adecuado"* al que refiere la ley en cuestión, cuando dispone que un patrono deberá proveer el mismo para que la madre trabajadora pueda extraerse la leche en el taller de trabajo. Adelantamos, que en ausencia de precedente jurisprudencial, nos servimos de las normas de hermenéutica para interpretar las disposiciones que atañen a la controversia. Especialmente, acudimos a las expresiones de política pública, exposición de motivos y disposiciones particulares tanto de la citada ley como de legislaciones análogas.

Abonando a lo anterior, tomamos cuenta de que compareció ante nos la parte apelante de epígrafe, Metro Guard Services, Inc., en solicitud de revisión de Sentencia Enmendada de 10 de agosto de 2004, notificada el 25 de agosto de 2004, dictada por Sylvette A. Quiñones Mari, Juez del Tribunal de Primera Instancia (TPI), Sala Superior de Caguas. Mediante el referido dictamen se declaró con lugar la petición de *injunction* preliminar y permanente que presentó la parte apelada, Melissa Torres Ramos, a la luz de las disposiciones de la Ley Núm. 427 del 16 de diciembre de 2000, la cual reglamenta el período de lactancia o de extracción de leche en las empresas privadas. También se dispuso que habría de reconocérsele los beneficios que provee dicha ley por un período de ocho (8) meses; y además, se le concedió una partida de $15,000.00 por concepto de *"honorarios de abogado"* y costas.

Inconforme con dicha determinación, acudió ante nos la parte apelante, señalándole al TPI que erró al resolver: (1) que los requisitos impuestos por el Art. 5 de la Ley Núm. 427, *supra*, no aplican a una empleada que quiere extraerse leche materna en su lugar de trabajo; (2) que la parte apelante no le proveyó un *"lugar adecuado"* para que la apelada pueda extraerse la leche; (3) que el no tener un lugar adecuado para que la apelada pueda extraerse la leche es discriminatorio; y (4) al imponer honorarios de abogado cuando no hubo determinación de temeridad.

Contando con el beneficio de la comparecencia de ambas partes involucradas, estamos en posición de resolver.

### I

En vista de que esta controversia remite particularmente a la discusión de una cuestión derecho, nos limitamos a presentar un breve resumen de las teorías y argumentos que han presentado las partes, y además, de las determinaciones realizadas por el tribunal de instancia en el dictamen apelado.

La parte apelada presentó demanda en solicitud de *injunction* (en todas su modalidades, a saber, provisional, preliminar y permanente) en contra de la parte apelante. Basó sus reclamaciones en la Ley Núm. 427 del 16 de diciembre de 2000 e invocó los mecanismos provistos por la Ley Núm. 2 del 17 de octubre de

1961. En síntesis, la parte apelada alegó: que trabaja para la parte apelante, la cual es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico; que el 8 de febrero de 2003 comenzó a extinguir el término concedido por ley como descanso por embarazo o licencia de maternidad; que el 10 de febrero dio a luz; y que posteriormente, el 6 de abril de 2003 se reintegró a sus labores para la empresa apelante. Además de lo anterior, la parte apelada adujo que había seleccionado la lactancia como método de alimentación para su criatura, y que por ello, al regresar a su lugar de trabajo, solicitó a su patrono (la parte apelante), en varias ocasiones y mediante diversos medios, que le permitiera y le proveyera un lugar habilitado para extraerse la leche materna.

En resumen, la contención de la apelada redunda en que su patrono, la parte apelante, se ha rehusado en proveerle el lugar adecuado en el que ella pueda realizar la extracción de la leche, lo cual, a su juicio, incide desfavorablemente en su habilidad para ejercitar el derecho que la citada Ley Núm. 427 le confiere. Ha sostenido, además, que la parte apelante le ha violentado su dignidad y derecho a la intimidad al no habilitar el lugar adecuado donde ella pueda, en privado, extraerse la leche. Según la parte apelada, y conforme a la exposición narrativa de la prueba, ▮ se ha visto precisada en más de 10 ocasiones ha extraerse la leche en el baño de la caseta de vigilancia donde trabaja, a cuyo baño, otros empleados que laboran en las facilidades entran y salen continuamente, y que además, dicha facilidad sanitaria no se encontraba limpia.

Todo lo anterior se ha suscitado, según la parte apelada, muy a pesar de ella haber cumplido con los requisitos de la referida Ley Núm. 427 proveyéndole las certificaciones médicas que requiere dicha pieza legislativa a los efectos de acreditar al patrono que ella continúa lactando o proveyéndole leche materna al infante mediante la extracción de leche. Alegó, además, que el apelante violó el Artículo 8 de la referida ley al no garantizarle los derechos que provee la misma, por lo que, invocando el Artículo 10 del mismo cuerpo legal, solicitó se le ordenara a la parte apelante que le permitiera ejercer su derecho a lactar a su criatura, y además, a que habilitara un lugar adecuado, higiénico y privado para esos fines. La postura de la parte apelada se ha mantenido hasta el momento en esa tónica.

De otro lado, la parte apelante se ha opuesto a la parte apelada argumentando que la primera no cumplió cabalmente con los requisitos que impone el Artículo 5 de la Ley Núm. 427. En apoyo de su posición ha señalado que la ley requiere que la madre que solicite el beneficio de lactar a su criatura presente dos certificados médicos, a saber, uno al cuarto mes de nacido el infante y otro en el octavo (según el Artículo 5 de la referida ley). Adujo que en el caso de la apelada, sólo presentó uno, y ello, en noviembre de 2003, o sea, pasados ocho meses del alumbramiento. Ha alegado además que nunca le impidió extraerse la leche materna a la parte apelada.

En lo que respecta a lo relacionado al lugar habilitado para la extracción de la leche, ha sostenido la parte apelante que en vista de que es una compañía de seguridad, las facilidades en donde asigna a trabajar a sus empleados no son de su propiedad, por lo que está imposibilitado de habilitar o construir allí. Además, ha insistido en la adecuacidad de la caseta de vigilancia en la que ha laborado la parte apelada. De acuerdo a la parte apelante, la caseta cuenta con cristales ahumados, puerta, baño, lavamanos, receptáculos, nevera y silla.

Durante el juicio, las partes tuvieron la oportunidad de presentar evidencia documental y testifical. En su análisis, el tribunal de instancia indicó que no estaba en controversia el hecho de que se le permitía lactar a la parte apelada a su bebé; también, que se reconocía que aquélla había estado lactando a su criatura desde que nació y que continuaba haciéndolo. Más bien, adujo el tribunal apelado que la controversia se limitaba a si la caseta de guardia de seguridad constituye un *lugar adecuado* para extraerse leche. A su vez, el tribunal destacó cómo la parte apelante había interpuesto como defensa afirmativa el alegado incumplimiento por la parte apelada de los requisitos de ley, ello, en referencia a la presentación de las certificaciones médicas a las que hace referencia la Ley Núm. 427, *supra*.

Súmese, que el tribunal de instancia determinó que cuando la Ley Núm. 427 hacía referencia al período de lactancia, ello comprendía igualmente el período para extraerse leche. No obstante, distinguió que en el Artículo 5 de dicha ley (la que refiere al deber de presentar las certificaciones médicas), solamente se hacía referencia al proceso de lactar y no al de extracción de leche. Por lo que, en síntesis, dicho foro concluyó que los requisitos exigidos por dicho artículo aplicaban exclusivamente a las madres que desearan lactar a su bebé en el taller de trabajo, no así a las que desearan extraerse leche. Señaló el tribunal que la aquí apelada sometió tardíamente (pasados ocho meses), el primer certificado médico que le acreditaba como *"madre lactante"* según le requería la ley. Añadió que ello le impedía reclamar ese beneficio a su patrono.

No obstante, el tribunal de instancia indicó que dado que la aquí apelada puso al tanto a su patrono de que lo que solicitaba era un lugar para extraerse la leche materna, ello era suficiente para tener acceso a los derechos consagrado en la Ley Núm. 427. Luego de tomar cuenta de que la referida legislación no define lo que es el *"lugar adecuado"* que debe proveer el patrono para la extracción de leche materna, el tribunal determinó que a su juicio, *"el baño de la caseta de guardia de seguridad no es un lugar habilitado para extraerse leche materna y tampoco es un lugar higiénico"*. ■

Prosiguió el tribunal de instancia indicando que era discriminatoria la omisión de la parte apelante, como patrono de la parte apelada, el no proveer un lugar disponible para extraerse la leche, lo que a su juicio, debe considerarse un derecho natural. Dispuso además dicho foro que en el caso de que la parte apelante no negociara con los clientes que contratan sus servicios para que proveyeran un espacio habilitado para los propósitos contemplados en al Ley Núm. 427, entonces tenía la obligación de proveer unas facilidades adecuadas para que la parte apelada pudiera llevar a cabo el proceso de extracción de leche en sus oficinas centrales. Por último, determinó el tribunal que la parte apelada entonces podría ejercer su derecho a extraerse la leche por un término de ocho meses, término análogo al que había estado llevando a cabo la extracción de leche en un lugar inadecuado. También, se le impuso el pago del $15,000.00 a la parte apelante por concepto de *"honorarios de abogado"*.

## II

En la exposición de motivos de la Ley para Reglamentar el Período o de Extracción de Leche, Ley núm. 427 del 16 de diciembre de 2000, se expresa que:

*"El Departamento de Salud, en representación del Gobierno de Puerto Rico, adoptó el 21 de febrero de 1995 como **política pública la promoción de la lactancia materna en Puerto Rico,** que tiene como propósito fomentar este método como el más idóneo de alimentación para los infantes.*

*[...]*

***No existe impedimento legal que impida a la madre continuar lactando a su bebé aun después de regresar al trabajo, luego de disfrutar su licencia de maternidad.*** *No obstante, esta Legislatura considera imperativo el reglamentar la oportunidad de ejercer este derecho cuando la madre se reintegre a sus funciones.*

*Por ser Puerto Rico un país de economía competitiva, tiene que ser uno creativo al conceder a los empleados, beneficios y mecanismos que permitan ejercer determinados privilegios y derechos. Esta pieza legislativa es ejemplo de esa creatividad. Está fundamentada en experiencias previas de negociación colectiva.*

***Al mismo tiempo concede un incentivo contributivo a los patronos privados por cumplir con la política pública del Estado de permitir a madres lactantes en sus empresas que puedan disfrutar del derecho de lactar o extraerse leche materna.***

***Esta Ley reconoce la política pública de la lactancia otorgando un período de lactancia o extracción de***

*leche materna tanto en la empresa privada como en el Gobierno,* sus instrumentalidades, municipios y corporaciones públicas. " (Énfasis suplido).

En el Artículo 2 de esta ley se presentan las siguientes definiciones:

*"[...]*

*(c) "Criatura lactante"- Es todo infante de menos de un (1) año de edad que es alimentado con leche materna.*

*(d) "Extracción de leche materna"- Proceso mediante el cual la madre con el equipo adecuado se extrae de su organismo la leche materna.*

*(e) "Jornada de trabajo"- A los fines de aplicación de esta Ley, es la jornada de tiempo completo de siete (7) horas y media (1/2) que labora la madre trabajadora.*

*(f) "Lactar"- Acto de amamantar al infante con leche materna.*

*(g) "Madre lactante"- Toda mujer que trabaja en el sector público o privado que ha parido una criatura, ya sea por métodos naturales o cirugía, que esté criando a su bebé y también toda mujer que haya adoptado una criatura y mediante intervención de métodos científicos tenga capacidad de amamantar.*

*[...]*

*(i) "Patrono"- Toda persona natural o jurídica para quien trabaja la madre trabajadora. Esto incluye al sector público, sus agencias del gobierno central, corporaciones públicas, municipios y el sector privado."*

En el Artículo 3 se provee para que las madres trabajadoras que se reintegran a sus labores, después de disfrutar su licencia por maternidad, tengan la oportunidad de lactar a su criatura durante media (1/2) hora dentro de cada jornada de tiempo completo. Ese período puede ser distribuida en dos períodos de quince (15) minutos cada uno, para acudir al lugar en donde se encuentra la criatura a **lactarla, en aquellos casos en que** la empresa o **el patrono tenga un Centro de Cuido** en sus facilidades **o para extraerse la leche materna en el lugar habilitado a estos efectos en su taller de trabajo.** El Artículo 4 dispone que el período de lactancia o de extracción de leche materna tendrá una duración máxima de doce (12) meses dentro del taller de trabajo, a partir del regreso de la madre trabajadora a sus funciones.

De otra parte, el Artículo 5 de esta ley dispone que:

*"Toda madre trabajadora que desee utilizar la* **oportunidad de lactar** *a su criatura, según lo dispuesto en esta Ley, deberá presentar al patrono una* **certificación médica** *al efecto, durante el período correspondiente al* **cuarto (4to.) y octavo (8vo.) mes de edad del infante,** *en donde se* **acredite y certifique que esa madre ha estado lactando a su bebé.** *Dicha certificación tendrá que presentarse no más tarde del día cinco (5) de cada período."* (Énfasis suplido).

Conforme al Artículo 8 de la ley en cuestión, se establece que todo patrono deberá garantizar a la madre lactante que así lo solicite, el derecho de lactar a su criatura o extraerse la leche materna. A cambio de la concesión o viabilización de dicho derecho a sus empleadas, todo patrono de la empresa privada se le concede un incentivo contributivo de acuerdo al Artículo 9 de la mencionada ley.

Por último, **toda madre lactante a quien su patrono le niegue el período** otorgado mediante esta Ley para

lactar o extraerse la leche materna, podrá acudir a los foros pertinentes para exigir que se le garantice su derecho según lo establece el Artículo 10 de esta ley. Además, el referido artículo dispone que el foro con jurisdicción podrá **imponer una multa** al patrono que se niegue a garantizar el derecho aquí establecido por los **daños** que sufra la empleada y que podrá ser **igual a tres veces el sueldo que devenga la empleada por cada día que se le negó el período** para lactar o extraerse la leche materna.

Para adelantar la política pública destinada a fomentar la lactancia en Puerto Rico, además de la Ley Núm. 427, *supra*, se ha aprobado una serie de legislación relacionada al asunto. Así por ejemplo, debe tomarse en cuenta entre otras a:

*"1. La Ley Núm. 32 de 10 de enero de 1999, la cual requiere a los centros comerciales, centros gubernamentales, puertos y aeropuertos a establecer áreas diseñadas para la lactancia y cambio de pañales a niños de corta edad.*

*2. La Ley Núm. 31 de 30 de enero de 2002, la cual excluye del servicio de jurado a las madres lactantes.*

*3. La Ley Núm. 155 de 10 de agosto de 2002, la cual ordena a los Secretarios de Departamentos, a las Corporaciones Públicas y a los Directores y Administradores de las instrumentalidades públicas del Gobierno del Estado Libre Asociado de Puerto Rico a designar espacios para la lactancia que **salvaguarden el derecho a la intimidad de toda madre lactante en las áreas de trabajo.***

*En la exposición de motivos de esta ley, se indica que la política pública de este gobierno es la de poner a disposición de las madres las oportunidades y los mecanismos que estime necesarios para el cabal desarrollo de nuestro hijos, tanto en el aspecto físico como en el mental. Se destaca que la atención temprana así como la debida alimentación en sus primeros días es vital para el desarrollo de aquellos. Toma en cuenta el legislador que se ha demostrado científicamente que la leche que produce la madre, luego de su alumbramiento, es insustituible y necesaria para el desarrollo y la buena salud de los niños. Además, toma cuenta de la existencia de mecanismos que permiten la extracción de la leche y del hecho de que la misma puede ser mantenida en un refrigerador para luego ofrecérsela a los infantes. **Por ello, indica el legislador, que entienden necesario proveer áreas especiales de lactancia que permitan que la madre se extraiga la leche y donde la misma se almacene temporalmente.***

*4. La Ley Núm. 95 de 23 de abril de 2004 se crea para **prohibir el discrimen contra las madres que lactan a sus criaturas**; para garantizar el derecho a la lactancia; para proveer que la lactancia no es una violación de ley; para establecer multas entre otras cosas. Bajo esta pieza legislativa, conforme a la exposición de motivos, se expresa de forma clara y definitiva que bajo ningún concepto puede considerarse el ejercicio del derecho a la lactancia en público como una exposición deshonesta u acto obsceno, y sí como lo que es, un acto y **derecho natural**.*

*En esta ley se detalla el derecho de una madre a lactar a sus niños en cualquier lugar público o privado que sea frecuentado por público o sirva de recreo. Cónsono con lo anterior, se establece que **constituirá una práctica discriminatoria prohibida por esta ley cualquier acto directo o indirecto de** exclusión, distinción, restricción, segregación, **limitación**, denegación o cualquier otro acto o práctica de diferenciación incluyendo el denegar **a una persona el total disfrute de** los bienes, servicios, **facilidades, privilegios, ventajas y acomodos** en cualquiera de los lugares antes descritos basado en el que una madre esté lactando.*

*También, se tipifica como **delito menos grave** las actuaciones descritas como prácticas discriminatorias bajo esta ley (entiéndase, prohibir, impedir o **de alguna forma limitar** o cohibir a una mujer que lacte en los lugares mencionados por la ley). No sólo ello, sino que se crea además una causa de **acción civil por daños y perjuicios** contra la persona natural o jurídica que interfiera con el ejercicio del derecho a lactar.*

*5. La Ley Núm. 455 de 23 de septiembre de 2004 que enmienda la antes citada ley y le añade un artículo a fin de establecer expresamente que **el área o espacio físico para la lactancia a que se refiere la misma no podrá coincidir con el área o espacio físico destinado para los servicios sanitarios comúnmente conocidos como baños.***

*En particular, en la exposición de motivos de esta ley, se indica que en vista de que la lactancia materna es un proceso de alimentación hace imperativo que el área designada para tal actividad sea una **adecuada e higiénica**. Se añade que "**bajo ningún concepto puede coincidir con el área designada para servicios sanitarios ni para cambiar pañales a los infantes.***

*Lo anterior, dado que no se puede pretender que un infante sea alimentado en un área en la cual a una persona consciente, adolescente, adulto o cualquier otro, no se le recomienda ingerir alimentos por su alta concentración de bacterias, a pesar del mantenimiento que se realice en la misma. Por tal motivo, el legislador expresa que de la misma forma que se propenden a áreas adecuadas e higiénicas para la alimentación de personas adultas, es menester que exista igualdad de dicha protección para los infantes, especialmente cuando son alimentados naturalmente, entiéndase, por vía de la lactancia. Agrega el legislador que **para evitar cualquier duda o para evitar cualquier subterfugio en el cumplimiento de la ley, es que se hace constar de manera expresa mediante legislación dicha prohibición.***

*6. La Ley Núm. 456 de 23 de septiembre de 2004 provee que **las áreas accesibles y diseñadas para la lactancia** en centros comerciales, centros gubernamentales, puertos y aeropuertos, **deberán garantizar a la madre lactante privacidad, seguridad e higiene**. Al igual que Ley Núm. 455, en el artículo relacionado a la "habilitación de áreas para lactar" de esta ley, se dispone que dichas áreas **no podrán coincidir con el área o espacio físico destinado para los servicios sanitarios o baños.***

*7. La Ley Núm. 65 de 24 de agosto de 2005 se crea para obligar a la Asamblea Legislativa a establecer un Centro de Lactancia en el área de trabajo de modo que las madres que trabajan para dicho cuerpo **puedan extraerse la leche materna, brindándole el espacio y la intimidad que necesita para ese proceso."***

Un análisis ponderado de las referidas piezas legislativas, tanto sus disposiciones como sus correspondientes exposiciones de motivos, nos pone en posición de llegar a las siguientes conclusiones de derecho respecto a la controversia aquí atendida.

## III

### A

En lo que respecta al primer señalamiento de error realizado por la parte apelante, concluimos que se cometió. El tribunal de instancia erró al interpretar que el requisito que impone el Artículo 5 de la Ley Núm. 427 a *"[t]oda madre trabajadora que desee utilizar la oportunidad de lactar a su criatura de presentar a su patrono una certificación médica que acredite que ha estado lactando a su bebé"*, sólo aplica a la madre lactante. Si bien es cierto que la definición de *"madre lactante"* en el Artículo 2 de la aludida ley no parece incluir la definición de *"madre que se extrae leche materna"*, tampoco la ley crea una definición distinta para detallar o distinguir este último concepto del primero. Entendemos que en este caso hay que ajustarse a los propósitos de la ley según quedan plasmados en su exposición de motivos, y de hecho, más claramente en el propio título de la ley.

La interpretación del TPI se aleja de tales propósitos, los cuales redundan en regular el período para que una madre, que opta por lactancia como medio para alimentar a su criatura, pueda bien **lactar a su bebé en el área de trabajo, o en su defecto, extraerse leche materna**. El que se trate de uno u otro supuesto sólo dependerá de que el patrono tenga o no como parte de sus facilidades un Centro de Cuido con área para lactancia. En el caso

de que el patrono sí disponga de centro de cuido, la madre podrá ir en el período que le concede la ley al lugar donde se encuentre la criatura para lactarla. Pero si el patrono no dispone de un centro de cuido, la ley le impone el deber de proveer un *"lugar habilitado"* en el taller o área de trabajo para que la madre pueda extraerse la leche. En uno u otro caso, entendemos que la madre lactante (o la que se extrae leche) está sujeta a la obligación que le impone el referido Artículo 5.

A nuestro juicio, se puede inferir razonablemente que en cuanto a los deberes y protección de la ley en cuestión, se equipara a la madre lactante a la que se extrae la leche. La única aparente distinción entre uno y otro caso, como indicáramos antes, es en cuanto a la instancia en que el patrono disponga o no de un centro de cuido en sus facilidades. Lo anterior, de todas formas, no exime al patrono de sus obligaciones bajo la Ley Núm. 427. Todo lo contrario, le impone la obligación análoga de proveer un lugar adecuado para que la *"madre obrera lactante"* se extraiga la leche. En apoyo de lo anterior, puede traerse a colación el hecho de que la Ley Núm. 427, *supra*, establece claramente en su Artículo 8 que la obligación del patrono es la de *"garantizar a la madre lactante **que así lo solicite**, el derecho de **lactar** a su criatura **o extraerse la leche materna**"*.

Además de lo anterior, cabe destacar que como parte de la discusión de su primer error, la parte apelante argumentó que a su juicio quedaba liberado o de cierta manera eximido de tener que cumplir con la obligación que le impone la Ley Núm. 427 por el hecho de que la parte apelada alegadamente no cumplió a cabalidad con los requisitos del referido Artículo 5 de dicha ley. También, en cierta manera insistió en equiparar el requisito de la presentación de las certificaciones médicas a las que hace referencia el artículo 5 con los requisitos de lo que se entiende en derecho constituye una *"notificación adecuada"*. No le asiste la razón.

El argumento de la parte apelante descansa en la pretensión de que se ponga el cumplimiento con una formalidad de ley por encima de la política pública establecida y reiterada del Estado de promover la lactancia o la extracción de leche materna. Aunque la ley objeto de análisis impone como requisito el presentar las referidas certificaciones médicas, lo que subyace a esa formalidad es la política pública del Estado, por la cual, se impone el deber al patrono de garantizar a la madre lactante *"que así lo solicite"*, el derecho a lactar o extraerse la leche según el mencionado Artículo 8 de la Ley Núm. 427. Nada en la ley sugiere que dicho requisito es jurisdiccional, aunque de igual forma reconocemos que tampoco se expresa que sea de estricto cumplimiento. No obstante, tomando en cuenta, como dijéramos antes, la clara y patente intención del legislador de proveer mecanismos, privilegios, beneficios y acomodo a las madres que lactan o que se extraen leche, mediante la conminación de una multiplicidad de piezas legislativas que atienden ese particular, no podemos sino negarnos a sobreponer esa intención al cumplimiento *"no cabal"* o defectuoso de una formalidad de ley.

Además, es menester aclararle a la parte apelante que la certificación médica a la que hace referencia el Artículo 5 de la Ley Núm. 427 cumple con el propósito de acreditar y certificar que la madre ha estado lactando a su bebé. La presentación de esa certificación no puede equipararse a la notificación o *"solicitud"* de la madre para que se le permita lactar o extraerse leche. La *"solicitud"* que realiza a su patrono la madre que desea lactar o extraerse leche, como indica el Artículo 8 de la Ley Núm. 427, es lo que activa la protección provista en dicha pieza legislativa. A su vez, dicha *"solicitud"* es lo que activa la obligación del patrono de viabilizar el ejercicio de ese derecho por parte de la madre lactante.

Por tanto, conviene separar y distinguir dos momentos conforme a la legislación en cuestión. Primero, el momento de *"la solicitud"* del ejercicio del derecho (conforme al Artículo 8 de la ley); y segundo, el momento de la *"presentación de la certificación médica"*, para acreditar que la madre continúa ejerciendo ese derecho (conforme al Artículo 5). El primer momento, entendemos debe darse tan pronto como la madre reingresa a sus labores de su licencia de maternidad. Entendemos razonable presuponer que si la madre eligió la lactancia como método de alimentación de su criatura, puede y debe, tan pronto como regresa a su taller de trabajo, informarle o *"notificarle"* ese particular a su patrono. Es en ese momento en el que el patrono deberá moverse a garantizarle a la madre lactante su derecho a lactar o a extraerse la leche. Como indicáramos antes, lo uno o lo

otro dependerá de si tiene o no disponible facilidades de centro de cuido en el taller de trabajo.

Consecuente con lo anterior, hay que señalar que habiendo comenzado su obligación de garantizarle a la madre lactante ese derecho desde que es notificado con la solicitud de la madre lactante, también desde ese momento se activa la obligación de la madre lactante de acreditarle periódicamente al patrono, en las fechas correspondientes al cuarto y octavo mes de nacido el infante, que continúa lactando al bebé. De esa forma, le da certeza al patrono de que continúa con la obligación, que según el Artículo 4 de la ley Núm. 427, *supra*, habrá de extenderse por doce meses.

De interpretarse el asunto en términos de notificación o de "*notificación adecuada*", entonces entendemos que es el primer momento, el de la "*solicitud*" del ejercicio del derecho, el que hace las veces de una notificación. Si se interpretara, como ha señalado la parte apelante, que la presentación de la certificación médica, por ejemplo, al cuarto mes de nacido el infante constituye la notificación adecuada de que la madre lactante desea ejercer su derecho, se daría paso a un anacronismo.

La interpretación de la parte apelante presentaría el problema de que una madre lactante, una vez regresara de su licencia de descanso por embarazo (o licencia por maternidad), luego de extinguir en el mejor de los casos dos meses (según la legislación aplicable), no tendría entonces que notificar o presentar su solicitud a patrono, sino hasta que el niño tuviera cuatro (4) meses de nacido. Ello crearía un patente desfase, pues la madre, al reingresar a sus labores (cuando el niño tenga unos 2 meses de nacido), tendría que esperar unos dos meses más (cuando el niño cumpla los 4 meses de nacido), para entonces presentar formalmente su solicitud al patrono de que escogió la lactancia como método de alimentación de su criatura y que lo acredita con una certificación médica.

Esta incongruencia nos lleva a concluir que la solicitud de ejercer el derecho a lactar, como se expresa en el Artículo 8 de la Ley Núm. 427, no puede coincidir con el momento en que se presenta la certificación médica. Son momentos distintos. Lo lógico es pensar que la madre debe solicitar o notificar su deseo de ejercer su derecho a lactar tan pronto se reintegra a su trabajo. Posteriormente, al cuarto mes y al octavo mes de edad del infante, la madre deberá entonces acreditar a su patrono, de manera formal (mediante la certificación médica), si continúa lactando. De esa forma, la madre lactante podrá continuar beneficiándose de los períodos de lactancia o para la extracción de leche, y por su parte, el patrono le constará que deberá seguir garantizándole el ejercicio de ese derecho, con lo cual, podrá eventualmente justificar el acogerse a la exención contributiva para la que le provee la ley.

Por todo lo anterior, concluimos que en este caso, no existe problema de notificación.

**B**

En lo que atañe al segundo error señalado, no se cometió. En este caso, según la prueba a la que se hace referencia en los documentos que obran en el expediente, la parte apelada le solicitó a su patrono (a la parte apelante) que le permitiera ejercer su derecho a extraerse leche materna en un lugar adecuado. La parte apelada no consideró que la caseta de vigilancia constituyera el lugar adecuado al que hace referencia la ley. La parte apelante se opuso argumentando en síntesis: (1) que la caseta es un lugar adecuado por tener baño, enchufe, nevera, silla y lavamanos; (2) que la orden del TPI de que le proveyera un cuarto para extraerse la leche no reflejaba un balance adecuado entre la "*necesidad temporera*" de la madre obrera lactante y la inversión que ello le implicaría; (3) que las casetas no son de su propiedad, lo cual le dificulta aún más el proveer el lugar para que la parte apelada pueda extraerse la leche; (4) que es excesiva la orden a los efectos de que negocie y contrate con sus clientes que le provean a las madres obreras lactantes que envíe a trabajar un lugar adecuado para la lactancia o extracción de leche en sus facilidades; (5) que la exigencia de la limpieza de los baños debía levantarla la parte apelada al titular de las facilidades donde la apelante le asignara ir a trabajar.

Del expediente se desprende que la parte apelada tuvo la necesidad de extraerse la leche en una caseta de

vigilancia con baño. La caseta, según se describiera, tenía cristales por el frente y en el fondo un baño. Sobre la facilidad sanitaria, su limpieza quedó en entredicho. Además, quedó planteado que a la caseta y al referido baño tenían acceso otros empleados que laboraban, no particularmente para la parte apelante, sino para las empresas que tenían oficinas en el complejo cuyo acceso operaba la parte apelada en la caseta.

Sobre lo anterior, hay que destacar que si bien es cierto que en la Ley Núm. 427 el legislador no definió en su Artículo número 2 lo que es un lugar adecuado para la extracción de leche, sí lo hizo en otras legislaciones análogas. Como las referidas piezas legislativas comparten el mismo propósito que la Ley Núm. 427, por razón de la declarada y reiterada política pública que impulsa la promoción de la lactancia, acudimos a ellas para darle contenido a la ley objeto de nuestro análisis.

En ese ánimo, traemos a colación el hecho de que si algo ha hecho quedar claro el legislador es que los espacios que se designen para la lactancia o extracción de leche, tanto en el área privada como en la pública, deben **salvaguardar el derecho a la intimidad de toda madre lactante.** Además, igualmente se ha reiterado que **bajo ningún concepto el área designada para la lactancia o extracción de leche puede coincidir con el área designada para servicios sanitarios o baños.** Lo anterior, principalmente por razones de higiene. Como bien ha indicado el legislador, si se propende a que se destinen áreas adecuadas e higiénicas para la alimentación de las personas adultas, de igual manera hay que extender dicha protección a los infantes.

En ese sentido, avalamos la determinación del tribunal de instancia en lo que respecta a que una caseta de vigilancia con baño no constituye el lugar adecuado ni para lactancia ni para la extracción de leche al que hace referencia la ley. Además, en una caseta con ventanas de cristal a la que además tienen acceso otros empleados, dista mucho a nuestro juicio del mandato legislativo de que el *"lugar habilitado"* o *"adecuado"* para lactar o extraerse leche salvaguarde la intimidad de la madre lactante.

En lo que respecta a la queja de la parte apelante sobre la orden del tribunal de proveer dicho lugar, le recordamos a esta parte que esa exigencia se la impone responsablemente el tribunal porque la ley así lo requiere. La orden para la habilitación de un área para lactancia o para la extracción de leche sobre la parte apelante, no es obra del arbitrio del juzgador, sino que es un mandato de ley. La parte apelante debe tomar cuenta además de que independientemente de quién sea el titular de las facilidades a donde asigna a sus empleados a trabajar, en el caso de que su empleado sea una madre lactante, **la ley le impone a él como patrono, y no a un tercero, la obligación de garantizarle el libre ejercicio del derecho.**

Agréguese, que la orden del TPI planteando la posibilidad de que la parte apelante podría negociar con las personas a quien les brinda sus servicios le provean a sus empleados que sean madres lactantes el lugar adecuado al que hace la referencia la ley, nos parece que precisamente en una alternativa ingeniosa y viable que responde precisamente a la *"creatividad"* a la que evoca el legislador en la exposición de motivos de la Ley Núm. 427 dirigida a la promoción de beneficios y mecanismos que permitan a las madres lactantes ejercitar sus derechos.

## C

En cuanto al tercer error señalado, no se cometió estrictamente. La Ley Núm. 95 de 23 de abril de 2004 se creó precisamente para prohibir el discrimen contra las madres que lactan. Esta pieza legislativa establece expresamente como práctica discriminatoria *"cualquier acto directo o indirecto de [...] limitación [...] [del] total disfrute de [...]facilidades, privilegios, ventajas y acomodos en cualquier de los lugares [...]descritos [...]"* a las madres lactantes. Esta ley incluso tipifica como delito menos grave impedir o de alguna forma limitar a que una mujer que lacte en determinados lugares. Igualmente se establece una causa de acción en daños y perjuicios para reclamar contra aquella persona natural o jurídica que interfiera con el ejercicio del derecho a lactar.

Por otro lado, el Artículo 10 de la Ley Núm. 427 establece una causa de acción a favor de toda madre lactante a quien su patrono le niegue el período diario para lactar o extraerse leche. Incluso, se provee para la imposición

de una multa por dichas actuaciones. El propio articulado provee la fórmula para computar la multa por los daños sufridos por la empleada, a saber, *"tres veces el sueldo que devenga la empleada por cada día que se le negó el período para lactar o extraerse leche"*. No obstante lo anterior, reconocemos que esta pieza legislativa no califica dicha actuación como una práctica discriminatoria.

Este Tribunal entiende que no puede hacer extensivo el alcance de la Ley Núm. 95, *supra*, al caso de autos. La controversia de autos ha girado en torno a las disposiciones de la Ley Núm. 427, mediante la cual no puede calificarse como discriminatoria la conducta de un patrono que la contravenga. Lo anterior, muy a pesar de que, como en el caso de autos, la conducta del patrono se asemeje a las prácticas discriminatorias descritas en la Ley Núm. 95, *supra*, particularmente en la modalidad de *"limitar"* en alguna forma el ejercicio del derecho a lactar mediante un acto indirecto.

Tomamos cuenta de que, al menos *prima facie*, las actuaciones de la parte apelante podrían no verse como constitutivas de la negación al período de lactancia o de extracción de leche que provee la Ley Núm. 427. Sin embargo, examinando con profundidad la situación aquí en controversia, y analizando el espectro de conductas prohibidas por las legislaciones análogas a la Ley Núm. 427, podría concluirse que al dejar de proveer un lugar adecuado para que la parte apelada estuviera en posición de ejercer su derecho a lactar, salvaguardada su intimidad y en un lugar que no coincidiera con un servicio sanitario, podría verse constituida aunque digamos *"de manera indirecta"* la negación al ejercicio del derecho natural que tienen las madres a lactar. Ello haría posible la imposición de una multa según el Artículo 10 de la Ley Núm. 427.

Agréguese que sin la designación de un espacio adecuado para la lactancia o para la extracción de leche para las madres lactantes que laboren para su empresa, el argumento de que nunca se impidió que la empleada se extrajera leche en el taller de trabajo, resulta uno *pro forma*. El argumento de la parte apelante en esa dirección no puede tomarse sino como un subterfugio en el que pretendió ampararse para excusar, a fin de cuentas, su incumplimiento con la ley. Lo anterior, en vista de que se desprende del texto de la Ley Núm. 427 la obligación de los patronos privados a habilitar un lugar adecuado para que sus empleadas que sean madres lactantes puedan lactar a sus criaturas o extraerse la leche. En ese sentido, cabría la imposición de una multa sobre la parte apelante conforme a la fórmula dispuesta en el Artículo 10 de la Ley Núm. 427.

A pesar de ello, no nos moveremos a modificar el dictamen del TPI para imponer la multa a la que aludiéramos antes, en vista de que nunca antes en el proceso estuvo en tela de juicio ese particular. De hecho, tampoco en esta fase apelativa la parte apelada trajo ante nuestra atención la posibilidad de que se analizara la conducta de la parte apelante en la forma antes reseñada. En este sentido, tomamos cuenta de que habría de habérsele reconocido a la parte apelante la oportunidad de defenderse de esta alegación.

## D

El cuarto error señalado no se cometió. Si bien es cierto que el TPI no hizo expresión de que la parte apelante hubiere incurrido en temeridad, mucho más cierto es que la parte apelada invocó las disposiciones de la Ley Núm. 2 de 17 de octubre de 1961 en su demanda, como fundamento para su reclamación.

En el Artículo 2 de la referida pieza legislativa, se dispone que:

*"**En todo caso radicado ante los tribunales** de Puerto Rico por un trabajador o empleado en **que se reclame cualquier derecho** o suma de dinero contra su patrono, **al amparo de la legislación laboral** federal o local o convenio de trabajo de naturaleza individual o **colectivo y en que se conceda la reclamación en todo o en parte, se condenará al patrono al pago de honorarios de abogado**, si éste no fuere uno de los abogados del Departamento del Trabajo y Recursos Humanos. [...]"*. 32 L.P.R.A. §3115.

En este caso, se cumplen todos los requisitos para la imposición del pago de honorarios según provee el

citado artículo: (1) una empleada hizo una reclamación a su patrono; (2) la reclamación surgió al amparo de una legislación laboral (la Ley Núm. 427); (3) el demandado era su patrono bajo la ley; y (4) se le concedió la reclamación. En ese sentido, no incidió el foro de instancia al imponer el pago de honorarios a la parte apelante.

**IV**

En mérito de todo lo anterior, confirmamos el dictamen apelado.

Lo anterior, con el efecto de avalar la determinación de que incumplió la parte apelante con su obligación en ley de proveer un lugar adecuado para que la parte apelada pudiera ejercer su derecho a extraerse la leche materna con privacidad, seguridad e higiene. En cuanto a los remedios, se reafirma la orden para que la parte apelante habilite un área en su taller de trabajo para que sus empleadas que lacten puedan ejercer sus derechos conforme a la ley; o en su defecto, procure buscar el acomodo para estas empleadas en las facilidades a donde las asigne a laborar. También, que se le reconozca a la parte apelada el período dispuesto por el TPI para que continúe con la extracción de leche. Igualmente, se confirma la imposición del pago de honorarios a la parte apelante de conformidad a la Ley Núm. 2 de 17 de octubre de 1961. Por último, conforme a la Regla 44.1(a) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1(a), se confirma el pago de costas a la parte apelada por haber prevalecido en el pleito.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones